## Criscillis, et al. v. Caudill Coal Company, et al.

(Decided April 29, 1927.)

### Appeal from Whitley Circuit Court.

1. Contracts.—In order to warrant court in adopting construction placed on contracts by parties thereto, it is necessary that the parties should have placed the same construction on the contract.

2. Compromise and Settlement.—Payment under contract substantially in full held not to constitute a settlement of dispute thereunder, in absence of showing that such payment was ever accepted as a definite and final settlement.

3. Mines and Minerals.—Forfeiture provision in coal lease in case of failure of lessees to pay royalty for three consecutive months, with further provision requiring lessor to proceed within six months after default or it would constitute a waiver, held not to affect lessor's right to collect royalties.

C. F. KELLY and STEPHENS & STEELY for appellants.

H. C. GILLIS, B. B. SNYDER and J. B. SNYDER for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

This appeal is prosecuted from a judgment by which G. C. Criscillis and E. F. White were adjudged to be indebted to the Caudill Coal Company, in the sum of $1,789.72, with interest. On May 18, 1917, W. G. Caudill and wife executed a lease to the Moss Coal Mining Company. The Moss Coal Mining Company, on July 14 of that year, assigned the lease in its entirety to the Caudill Coal Company. That lease contained the following provision relative to the payment of royalty:

"Ninth. The party of the second part further covenants and agrees to pay to the parties of the first part, for the use and enjoyment of the premises hereby leased for the purposes aforesaid, a minimum royalty of $350 per month for the year, the said royalty of $350 to begin within 12 months from the date of the shipment of the first car of coal shipped from the premises, and as a minimum royalty for the second year and each year thereafter the party of the second part agrees to pay to the parties of the first part $350 per month each year during the continuance of this lease, or until all the coal on or under said leased premises is mined out. The party of the second part agrees to pay the royalty on whatever coal is mined up to the time the minimum royalty begins, but it is understood and agreed between the parties that, in case of strikes, floods, riots, or fire and the mine on account thereof is idle, or by reason of the fact that the railroad company on whose line said mine is situated is unable to furnish cars by reason of car shortage, beyond the control of said company, or by reason of the market con-

dition being such that the second party cannot mine said coal and sell it at the expense of mining, then the second party is only to. pay the royalty on the coal actually mined during such conditions, *but said conditions shall not be permitted to exist longer than four months.*"

On October 18, 1920, the Caudill Coal Company leased this property to the above-named Criscillis and White, and in this lease the following provision was made relative to the payment of royalty:

"If the tonnage of coal mined for any one year at the agreed scale of royalties provided in following paragraphs does not amount to $8,000 per year, then first party is to be paid the sum of $8,000 for said year, and, if the tonnage for any one year exceeds the sum of $8,000 at the agreed royalty scale, then first party is to be paid royalty specified on actual tonnage; provided, however, it is understood and agreed that if second parties are prevented from mining the necessary tonnage for any month or months to bring the tonnage to the amount specified herein by reason of strikes, floods, riots, or fire and the mine on account thereof is idle by reason of the fact that the railroad company on whose line said mine is situated is unable to furnish cars by reason of car shortage beyond the control of said second party or by reason of the market conditions being such that second parties cannot mine said coal and sell it at the expense of mining, then second party is only to pay the royalty on the coal actually mined during such conditions, *but said conditions shall not be permitted to exist longer than four months.*"

It will be observed that the last thirteen words of the provisions for royalty in each of these contracts are identical. We have italicized these words for out of them has this litigation grown. The solution of this controversy involves a construction of the royalty provision of the lease from the Caudill Coal Company to Criscillis and White and a determination of its meaning.

It is the contention of Criscillis and White that, in event of the happening of any of these things, on account of which they were to be relieved from paying this minimum royalty, and the continuation of that condition, this contract means that for four months Criscillis and

White are entirely relieved from paying minimum royalty, but that for the fifth month they must pay it. If this condition continues then for the sixth, seventh, and eighth and ninth months they are again relieved, but must pay for the tenth, and so on, as long as the conditions continue.

It is the contention of the Caudill Coal Company that this provision means that, if the mine is not operated for any of the reasons set out for a period of twelve months, we will say, that during that time Criscillis and White must pay this minimum royalty of $666.66 per month for eight months of the year, but are by the provisions of this lease relieved of this minimum royalty for four months.

At the time that Criscillis and White entered into this lease, there was even then, a controversy between the Caudill Coal Company, and W. G. Caudill, relative to the meaning of the words italicized in the lease from Caudill to the Caudill Coal Company, and at that time J. B. Snyder and E. S. Moss, who were prominent stockholders in the Caudill Coal Company, told Criscillis and White that they were contending that these words meant that they might be relieved from the payment of minimum royalties for four months, then they would have to pay for the fifth, then they would be relieved for the next four months and have to pay for the tenth and so on. The Caudill Coal Company wished to collect minimum royalties for the same period it was compelled to pay minimum royalties, and therefore, in this lease to Criscillis and White, it inserted the same language that was embraced in the lease under which it was holding.

The Caudill lease has since been construed by the Letcher circuit court to mean that the lessees are only relieved from this minimum royalty during four months of any one year, and this construction the Caudill Coal Company has accepted. The chancellor below accepted it, and, in the judgment appealed from, Criscillis and White have been correctly required to pay minimum royalties right straight along for eight months of each year.

We shall now consider the various alleged reasons on account of which Criscillis and White contend that this judgment should be reversed. The first one is that the Caudill Coal Company represented to Criscillis and White at the time this lease was made, that these thirteen

words which we have italicized in the excerpts from each of these leases mean just what Criscillis and White are now contending they mean, but the record does not support Criscillis and White in this contention. On the contrary, the record shows that the Caudill Coal Company, through its officers, explained to Criscillis and White that they were so construing this contract, but Criscillis and White even then knew that a controversy about it between Caudill and the Caudill Coal Company was pending, and, having entered into this lease with knowledge of the pendency of this controversy, they cannot now be heard to say that such was the construction of this contract by the parties. Numerous authorities are cited to the effect that courts adopt the construction placed upon contracts by the parties, and, if there had ever been an agreed construction of this contract, those authorities would be in point, but here there was a controversy about what these words mean. Hence these authorities do not apply. To bring this case within the rule that courts will adopt the construction placed on contracts by the parties, it is necessary that the parties should have placed the same construction on this contract, which was not done in this case.

Their next alleged reason for reversal is their contention that there has been a settlement of this dispute. The evidence does not support their contention. Criscillis and White ceased operating this mine about December 1, 1922, and made a contract with the Ace Coal Company, to which the lease was assigned, by which the Ace Coal Company was to protect Criscillis and White against having to pay any back royalties which might appear to be due when this lease was construed by the Letcher circuit court. Criscillis and White then paid, perhaps not in full, but substantially in full, what was due according to their contention, but there is nothing to show that this was ever accepted as a definite and final settlement of the matter. The controversy was still open and unsettled, so this reason for reversal is not sufficient.

In this lease there was a provision for the forfeiture of it if the lessees should for a period of three consecutive months fail to pay the royalty, or to do any of the other things they had undertaken to do, and further in this lease there was a provision that the failure of the lessor to proceed thereunder for a failure or default for any three months, will not be a waiver of the default, but

the lessor must proceed within six months after such default, or same will be a waiver. Criscillis and White now contend that, having waited for more than six months before suing them for this royalty, this suit cannot now be maintained, but it is so evident that the above provision of the lease applied to the forfeiture of the lease and not the right to collect the royalties that this point is without merit.

We see no reason to disturb the finding of the chancellor.

The judgment is affirmed.